**TESMEC USA, INC., Appellant,**

v.

**ALLEN WHITTINGTON, Appellee.**

No. 10–04–00301–CV.

Court of Appeals of Texas, Waco.

March 22, 2006.

---

John R. Jensen, Jensen & Jensen, Arlington, for Appellant.

Susan E. Hutchison, Grapevine, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION DENYING REHEARING

### PER CURIAM.

Appellant Tesmec, Inc. has filed a motion for rehearing in which it asserts three issues: (1) legally insufficient evidence to meet the clear and convincing evidence standard required for a malice finding; (2) legally insufficient evidence to support the jury's finding of retaliatory discharge; and (3) error in issuing an opinion on the affirmative vote of two justices, thereby obviating potential appellate jurisdiction to the Supreme Court of Texas. We will overrule the motion, discussing only the third issue because it arose at the time our opinion was issued.

On April 26, 2005, under our Internal Administrative Rules, the court adopted "Procedures for Internal Deadlines for Approval of Opinions and Orders" ("Procedures"), which are Attachment "A" and which became effective on May 2, 2005. Following the Procedures, the opinion was issued on January 25, 2006, just over nine weeks after it was placed in circulation on November 22, 2005.

The motion for rehearing is denied.

GRAY, C.J., dissents.

Gray, Chief Justice, dissenting.

## DISSENTING OPINION TO OPINION DENYING [Motion for] REHEARING

This case now presents a near perfect example of why the justices on a panel should wait for the considered opinion of all three justices. The problem that keeps it from being a perfect example is that I cannot fully explain the significance and the intricacies of this exemplary case.

What happened on motion for rehearing is that the majority prepared an Opinion on Rehearing. I prepared a dissenting opinion. When my draft dissenting opinion on rehearing was circulated, they decided to substantially revise their opinion on rehearing to what you see now. While it would be improper for me to discuss the substance of the prior draft, the fact that the opinion they were willing to issue changed after they reviewed my dissenting opinion functionally explains why the opinions of all three justices should be obtained, reviewed, and considered before any opinion is issued.

Nevertheless, I must dissent to the opinion denying rehearing. The majority purports to address only the issue that "arose at the time our opinion was issued," that being the issuance of an opinion by only two of the justices. Maj. Op. at p. 179. In their opinion, the majority references only the Procedures for Internal Deadlines for Approval of Opinions and Orders as justification for issuing an opinion and judgment on which only two judges had voted. They assert that the opinion was issued "[f]ollowing the procedures." As I will explain, this is misleading; but that is really not the important issue.

The critical issue is the question of whether one justice, on a three judge panel, has the discretion to prioritize his or her own work or will the other two justices be allowed to arbitrarily set a deadline to which the third justice must adhere or be deemed to have agreed to the opinion and judgment of the other two justices. The lone justice is thus required to choose between compliance with internal procedures that set an arbitrary deadline in a case or his or her own determination of what mat-

ter has the highest priority, based on the relevant constitutional, statutory, and procedural rules, to which time should be devoted.

To understand this issue, I need to provide a frame of reference for the reader. Some of what follows has been distilled from a number of opinions, both published and unpublished.

### CHOICES

We should first discuss choices. What are my choices when the majority's arbitrary deadline is upon me? The majority apparently believes I have the following choices:

1. dissenting without a separate opinion;

2. dissenting with opinion to follow;

3. concurring without a separate opinion;

4. concurring with opinion to follow; and

5. not participating.

Not participating is not an option, and I will discuss that later. So that leaves four choices.

The interesting aspect of these four choices is that each of the four indicates that I should vote on the result that I believe is appropriate. What this reveals, since I believe this is a comprehensive list of all the choices they think are appropriate, is one of two things. Either they do not read what I write, or they believe it is appropriate to decide on the result before conducting the research necessary to determine the legally correct result.

In my special note in this case, and the others in which I have been required to utilize this procedural tool, I have tried to explain that I have not had the time to conduct the analysis I believe is necessary to determine if I agree or disagree with the result. If they took the time to read these notes, they would know that I believe the analysis should be done before the decision. So, either they have not read my explanations, or they believe it is appropriate to decide upon the result and then prepare the opinion necessary to support that result. I have always thought the analysis should be done first and then vote on the result.

### NOT PARTICIPATING IS NOT AN OPTION

Next, I must address whether it is appropriate for a justice on a panel to simply "not participate" in a decision. In none of the special notes or opinions I have issued will you find any language from me that suggests that I am not participating in the consideration and review of the case, in particular the opinion and judgment in the case. You will find only language that explains I am not yet prepared to vote—a clear indication I want to participate in the decision. But the majority refuses to hold their opinion long enough for me to properly consider it. In *Krumnow*, for example, after an extensive explanation of the problems in the case, I conclude my observations about the many issues in the case with the following:

> So, for all the reasons given, I can say no more than I am present but not prepared to vote on the merits of this case as of the date the opinion of only two members of the panel is being issued.

*Krumnow v. Krumnow*, 174 S.W.3d 820, 840 (Tex.App.—WacoAugust 24, 2005, pet. filed) (Special Note by Chief Justice Gray issued August 31, 2005). My inability to vote at the time the opinion was being issued in this case is no different than it has been in any of the other cases in which two justices refused to wait for the considered vote of the third justice before they issued their opinion.

Furthermore, and by far the most important observation, is that I do not believe I have the option to "not participate" in casting a vote on a judgment disposing of an appeal. *See Texas Parks and Wildlife v. E.E. Lowrey,* 2004 WL 2481000, *1, 2004 Tex.App. LEXIS 9824, *16–17 (Tex.App.—Waco 2004, order) (Gray, C.J., dissenting) (not designated for publication). I believe it is my ethical duty to participate. "A judge shall hear and decide matters assigned to the judge except those in which disqualification is required or recusal is appropriate." Tex. Code Jud. Conduct, Cannon 3(B)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit, G app. B (Vernon 1997). A single judge may, however, decide a motion; thus, participation in the decision of every motion is not necessary to fulfill this ethical requirement. *See* Tex. R. App. P. 10.4(a) (a single judge may decide a motion).

I know that Justice Vance holds an opinion to the contrary on whether he must participate in or recuse/disqualify himself from reviewing and voting on opinions. But I have waited for months for Justice Vance to participate in the decision of a case, and notwithstanding that he may have initially noted that he was not participating, to this date he has ultimately always cast a vote.

I do not believe I have the right to veto the issuance of any opinion as Justice Vance has implied in his opinions. *Texas Parks and Wildlife v. E.E. Lowrey,* 2004 WL 2481000, *1, 155 S.W.3d 456, 2004 Tex.App. LEXIS 9824, *14 (Tex.App.—Waco 2004, order) (Vance, J., concurring) (not designated for publication); *Pac. Emplrs. Ins. Co. v. Mathison,* No. 10–04–00314–CV, 2005 WL 2665454, *3, 2005 Tex.App. LEXIS 8650, *11 (Tex.App.—Waco Oct. 19, 2005, no pet.) (Vance, J., concurring); *Park v. Montgomery County,* No. 10–04–00231–CV, 2005 WL 2667488, 2005 Tex.App. LEXIS 8646, *12–13 (Tex.App.—Waco Oct. 19, 2005, pet. filed) (Vance, J., concurring). I simply believe that I have the discretion to prioritize what I choose to work on based upon changing events and the relative priorities and deadlines set by the legislature and high courts and not some arbitrary deadline created by an internal rule of questionable benefit for the Court. *See Johnson v. Baylor Univ.,* 188 S.W.3d 296, 311 (Tex.App.—Waco 2006, no pet. h.) (Special note by Chief Justice Gray); *Cathey v. Meyer,* 115 S.W.3d 644, 673–674 (Tex.App.—Waco 2003), *aff'd in part and rev'd in part, Meyer v. Cathey,* 167 S.W.3d 327 (Tex.2005).

While the majority may accept "not participating" as an option—they know I do not believe it to be an option.[1]

### PROCEDURES AND MORE PROCEDURES

Now for a little additional background on this case leading to the issuance of an opinion which, for all purposes, appears to have been joined in by me at the time it was issued. My special note in this case quotes the e-mail in which I notified the

---

1. I recognize that under exceptional circumstances a judgment voted upon by only two intermediate appellate court justices has been approved and affirmed. *See Dickinson State Bank v. Ogden,* 624 S.W.2d 214, 222 (Tex.Civ.App.—Houston [1st Dist.] 1981), *rev'd on other grounds,* 662 S.W.2d 330 (Tex.1984) (on rehearing); *Hoyt v. Hoyt,* 351 S.W.2d 111, 114 (Tex.Civ.App.-Dallas 1961, writ dism'd w.o.j.). These opinions are different than our situation because the third justice in those cases was not available. In the situations Justice Vance has chosen to rely upon these cases, I was not unavailable. In the two-justice decisions from this Court, Justices Vance and Reyna simply refused to wait for me to vote. Under their theory, if the two of them agree on a result, they do not even have to show me their opinion before it is issued. They only need me as the third justice on the panel at the time it is submitted. Tex. Gov't Code Ann. § 22.222 (Vernon 2004).

author of the opinion and the majority what my position was on the proposed opinion and judgment of the Court—that I was not yet prepared to vote.

*Other Internal Procedures*

But the misleading part of the majority opinion is in the statement that the opinion was issued "[f]ollowing the procedures" adopted on April 26, 2005, making it seem that they are the only relevant procedures. They are not. The date the opinion was actually issued is January 18, 2006. But to issue on this date, according to other procedures adopted by the majority, "Internal Deadlines for Issuing Opinions and Orders," the opinion should have been signed and returned to the opinion secretary by 10:00 a.m. on January 17, 2006, the day before it was to issue. I had checked with the opinion secretary well after the deadline and neither the opinion in this case nor the opinion in *Texas Genco* had been given to her. *Texas Genco v. Valence Operating Co.*, 187 S.W.3d 118 (Tex.App.—Waco 2006, no pet. h.). Thus, under the internal rules, unless an exception was approved, neither opinion should have had an issue date of January 18, 2006.

The reason I had checked with the opinion secretary on January 17, 2006 regarding these two opinions was for the express purpose of determining how they reflected the substance of my e-mail to the author at a time when something could be done about it if my position was not accurately reflected in the signature block of the opinions as issued. So when I discovered on January 17, 2006 that the opinions were not completed by the deadline for issuing them on January 18, 2006, I was relieved to know that they had decided to not issue them the next day. Then, on January 18, 2006, I learned three critical facts: (1) that the opinion in this case had been prepared for issuance that day; (2) that the opinion in this case had been prepared to reflect

that all three justices joined in it, *i.e.*, no indication or qualification upon my position in regard to voting on the opinion and judgment in the case; and (3) that Justices Vance and Reyna had joined in taking action without a meeting to avoid the signing deadline on not one, but two opinions and had issued both opinions on January 18, 2006, without even attempting to notify me that they intended to do so.

Thus, *on* the issue date, but prior to the issuance of the opinion, and immediately after I learned (1) and (2) above, I contacted Justice Reyna's staff and took all actions that I could to contact Justice Reyna, including a direct attempt to communicate with him in his office, but he had left, and discussing the need to contact him with his staff, e-mail, office phone/voice mail, home phone/voice mail, and cell phone/voice mail. I wanted to communicate to him my belief that his issuance of the opinion was an affirmative representation that I joined in it, when he knew that I had not joined that opinion. I attempted to communicate the same information to Justice Vance about Justice Reyna's case. I would have been telling Justice Vance the same thing about *Texas Genco* but, at that time, I did not yet know that Justice Vance had already taken the same steps to issue the opinion in *Texas Genco*. And I had not yet learned of the above-described item (3). I did not receive a copy of that document until around 4:00 p.m., when it was too late to pull the opinions because they were deposited in the mail at that time.

Justice Reyna and Justice Vance knew my position on the opinions at the time they signed their respective opinions and when they also joined together to issue both opinions as an exception to the regular procedure regarding circulation deadlines on January 18, 2006.

*Problems With Implementing Their Procedures*

Further, the majority neglects to mention the inconsistencies and problems they were having using their routing system.[2] In this case, I returned all the materials placed in circulation to Justice Reyna. Weeks went by before I received the routing slip indicating the revised issue date and implying that he did not intend to modify the majority opinion. Apparently, due to the complexity of the dual circulation, multiple deadlines, the variety of extensions, and the total failure to address what happens when there is more than one concurring or dissenting opinion, there have been on-going efforts to interpret and clarify their rules, such as what stays in circulation and who keeps originals, since they were first approved. Indeed, the problems implementing the system are so great Justice Vance has proposed revised circulation procedures to try to fix some of the problems.

The majority also feels compelled to mention the nine weeks between the date the original opinion was placed in circulation and the date it was issued. I have resisted the temptation to respond with a detailed listing of everything else that I worked on during this period. Some of the special notes I have issued have discussed more specifics. It should be sufficient to say that I have worked on the matters that I thought had the highest priority with due regard to keeping the bulk of the Court's cases moving as expeditiously as practical.

2. Until February 6, 2006, my chamber continued to use the circulation procedure, with one change, that was in place when I joined the Court in 1999. The change I made to that procedure had been made and the system continued in use since January 2004 when Justice Reyna joined the Court. The system

## CONCLUSION

I would withdraw the opinion issued by only two members of a three judge panel and do what I have done on all the cases assigned to my chamber—wait until I have the considered vote of all three justices on a panel before an opinion is issued and not mislead the parties and the public by issuing an opinion which appears as though all members on the panel join in it. Accordingly, I dissent to the denial of the motion for rehearing.

### Attachment A

## TENTH COURT OF APPEALS

### PROCEDURES FOR INTERNAL DEADLINES FOR APPROVAL OF OPINIONS AND ORDERS

May 2, 2005
Effective Date

April 26, 2005
Adopted Date

The following procedures for internal deadlines for approval of opinions and orders are adopted under the Internal Administrative Rules which became effective January 1, 2005. They apply to the circulation and approval of opinions and orders in cases pending in the Tenth Court of Appeals, except as herein noted.

#### DEFINITIONS

The words "Court"; "Elected Justices"; "Justice"; "Justices on the panel"; "Senior Justice"; "Former Justice"; and "Active District Judge," whenever used herein, have the same meanings ascribed to them in the Internal Administrative Rules. The

seemed to work very well. When the other justices refused to review my draft opinions unless I complied with their procedures, it resulted in a delay of approximately four months in the target date for the issuance of approximately a dozen opinions in circulation at that time.

following words have the meanings assigned to them when used in this Order:

"Authoring Justice" means the Justice to whom responsibility for the initial draft of an opinion on the merits for the case is assigned under the Internal Administrative Rules.

"Days" means calendar days unless otherwise specified. "Business days" means days the Court is open to the public.

"Issue Date" is the date an opinion or order is entered into the Case Management System and copies mailed to the persons entitled to receive them. It is ordinarily a Wednesday under the procedure known as the "Internal Deadlines for Issuing Opinions and Orders," dated September 2, 2004.

"Opinion" refers to a document that (a) determines the merits of an appeal or original proceeding, circulated after submission of the case to a designated panel, or (b) dismisses an appeal under the involuntary dismissal provisions of Rules 42.3 or 42.4 of the Rules of Appellate Procedure.

"Opinion on PDR" refers to an Opinion circulated to "correct or modify" a prior Opinion under Texas Appellate Rule of Procedure 50.

"Opinion after Motion for Rehearing" refers to an Opinion circulated after a motion for rehearing has been filed. If such an Opinion replaces a prior Opinion, it must be accompanied by an Order withdrawing the prior Opinion and judgment and substituting the current Opinion and judgment therefore.

"Opinion without Motion for Rehearing" refers to an Opinion revising and replacing an earlier issued Opinion, circulated when no motion for rehearing has been filed and with intent to issue within the period of the Court's plenary power.

"Order" refers to a document that does not determine the merits of an appeal or original proceeding but reflects an action by the panel assigned to the case, whether before or after submission of the case.

"Order Withdrawing" refers to an Order that withdraws a prior Opinion and judgment of the Court and substitutes the current Opinion and judgment therefor.

"Proposed Issue Date" is the date the author of a document designates as the Issue Date at the time the document is placed in circulation, subject to change as herein provided.

"Reviewing Justice" means a non-author who is on the panel for the case. The sequence in which a draft Opinion or Order is circulated to the two Reviewing Justices is determined by the author.

## GENERAL PROVISIONS

Drafts of Opinions placed in circulation shall be accompanied by copies of the parties' briefs in appeals or the pleadings and record in original proceedings, together with any other matter the Authoring Justice deems relevant. Modified draft Opinions which are circulated shall be accompanied by the same documents, any previously circulated drafts, and a redline version detailing the differences between the current and a former draft, unless a redline is not available or would be impracticable.

Drafts of Orders shall be accompanied by the motion or other pleading addressed, together with any other matter the Authoring Justice deems relevant.

Drafts of Opinions after Motion for Rehearing shall be accompanied by (a) the briefs of the parties, (b) the motion for rehearing and any response thereto filed, (c) the prior issued Opinion, (d) if the prior Opinion is being withdrawn, a draft Order Withdrawing, and (e) any other matter the

Authoring Justice deems relevant. Approval of the draft of such an Opinion accompanied by an Order Withdrawing also signifies approval of the Order Withdrawing.

Drafts of Opinions without Motion for Rehearing shall be accompanied by (a) the briefs of the parties, (b) the prior issued Opinion, (c) if the prior Opinion is being withdrawn, a draft Order Withdrawing, and (d) any other matter the Authoring Justice deems relevant and placed in circulation not later than the 30th day after the date the prior Opinion was issued. Approval of the draft of such an Opinion accompanied by an Order Withdrawing also signifies approval of the Order Withdrawing. After thirty days, the Justice desiring to revise an Opinion during the plenary power shall circulate a draft Order that withdraws the prior opinion and judgment and state separately the reasons why the Opinion should be withdrawn. If a draft Opinion without Motion for Rehearing or Order withdrawing the prior Opinion does not receive the approval of at least one reviewing Justice, then no further Opinion or Order may be issued. An Authoring Justice may choose to withdraw a draft Opinion without Motion for Rehearing at any time, but no revised draft may be circulated thereafter. In that event, the Authoring Justice shall request the return of the draft and accompanying materials.

## CIRCULATION DEADLINES

When a draft document that requires approval by the panel in a case is placed in circulation, it shall be accompanied by a Routing Slip in the form designated as Attachment A to this Order. The Authoring Justice shall note thereon and initial the date of circulation and a Proposed Issue Date, calculated for each type of document according to the schedule set forth below.

SCHEDULE FOR CIRCULATION:

| Type of Document | Time for First Reviewing Justice From Receipt | Time for Second Reviewing Justice From Receipt | Proposed Issue Date |
|---|---|---|---|
| Opinions on the Merits after Submission and in Original Proceedings | 14 days | 14 days | A Wednesday not less than 30 days after circulation |
| Opinion after Motion for Rehearing Filed | 14 days | 14 days | A Wednesday not less than 30 days after circulation |
| Opinion without Motion for Rehearing | 14 days | 14 days | First Wednesday prior to expiration of plenary power (TRAP 19.1(a)) |
| Non-dispositive orders | 7 days | 7 days | A Wednesday not less than 15 days after circulation |

The first Reviewing Justice on the panel shall have the time period allowed in the above schedule for review and/or approval of the document. On or prior to the expiration of the time period allowed, which may be extended only as herein provided, the first Reviewing Justice shall forward

the document and attachments to the other Reviewing Justice on the panel, specifying on the Routing Slip the notation "Approved" or "Intend to Concur or Dissent," and date and initial as provided. Failure to act within the time allowed or extended constitutes approval of the draft Opinion or Order.

The second Reviewing Justice on the panel shall have the time period allowed in the above schedule for review and/or approval of the document. On or prior to the expiration of the time period allowed, which may be extended only in the manner herein provided, the second Reviewing Justice shall forward the document and attachments to the author, specifying on the Routing Slip the date and the notation "Approved" or "Intend to Concur or Dissent," and date and initial as provided. Failure to act within the time allowed or extended constitutes approval of the draft Opinion or Order.

If a Reviewing Justice is out of the office for three or more consecutive business days during any period provided for that Justice's review of a draft document, whether for business or pleasure, that Justice may extend the review period and delay the Proposed Issue Date by seven (7) days. If a Reviewing Justice is out of the office for seven or more consecutive business days during any period provided for that Justice's review of a draft document, whether for business or pleasure, that Justice may extend the review period and delay the Proposed Issue Date by fourteen (14) days. If a Reviewing Justice is out of the office for ten or more consecutive business days during any period provided for that Justice's review of a draft document, whether for business or pleasure, that Justice may extend the review period and delay the Proposed Issue Date by twenty-one (21) days. In determining whether business days are consecutive, Saturdays, Sundays, and days on which the Court is closed to the public shall not be counted. Each extension and delay under this paragraph shall be noted and initialed on the Routing Slip by the Reviewing Justice.

A Reviewing Justice and the Authoring Justice may, by agreement, extend the review period for that Reviewing Justice and delay the Proposed Issue Date by any multiple of 7 days (e.g., 7 days, 21 days, 35 days), in which event the Reviewing Justice shall note and initial the extension and delay on the Routing Slip.

After circulation of a draft document to both Reviewing Justices, if either Reviewing Justice has noted "Intend to Concur or Dissent" and the Authoring Justice does not intend to substantively modify the draft document under review, then the Authoring Justice shall forward a copy of the draft Opinion or Order to the Reviewing Justice for preparation of the concurring/dissenting opinion. The Authoring Justice shall note that the Proposed Issue Date for the document is delayed for twenty-one (21) days. The concurring/dissenting opinion may be issued on the Issue Date or on a later Issue Date, at the option of its author.

If a Reviewing Justice has noted "Intend to Concur or Dissent" but the Authoring Justice intends to substantively modify the draft document, then the Authoring Justice shall prepare a modified draft which shall be circulated with a new Proposed Issue Date and Routing Slip.

If a circulating draft document does not receive the approval of at least one Reviewing Justice, then the Authoring Justice shall either prepare a modified draft to satisfy the concerns of one or both of the Reviewing Justices and circulate the revised draft with a new Proposed Issue Date and Routing Slip or ask that the

Reviewing Justices decide which of them shall draft a proposed document in lieu thereof. A draft document with a new author shall be circulated with a new Proposed Issue Date and Routing Slip according to the above schedule.

An Authoring Justice may choose to withdraw a draft document in circulation at any time. An Authoring Justice who withdraws a draft shall request the return of the draft and accompanying materials. Regardless of whether the Authoring Justice makes substantive changes to the draft document after withdrawal from circulation, the Authoring Justice shall assign a new Proposed Issue Date and Routing Slip when the draft (or a modification thereof) is again placed in circulation.

Notwithstanding any Proposed Issue Date, an Opinion or Order may be issued earlier if all Justices on the panel join the draft document in a timely manner.

## OPINIONS ON PDR

After a Petition for Discretionary Review is filed in a criminal case, any Justice joining the majority Opinion in the case may propose an Opinion on PDR and Order Withdrawing, which also provides for dismissal of the petition for discretionary review by operation of law.

The Issue Date for an Opinion on PDR, which must be within the 30–day time limit provided by Appellate Rule 50, is the date the 30–day time limit expires, if on a Wednesday; otherwise the Issue Date is the first Wednesday preceding the expiration of the 30–day period. Notwithstanding any noted Issue Date, the Opinion on PDR and Order Withdrawing may be issued on an earlier Issue Date if all Justices on the panel join the Opinion and Order in a timely manner.

The draft Opinion on PDR and Order Withdrawing shall be accompanied by (a) the prior opinion, (b) the petition for discretionary review, (c) the briefs of the parties, and (d) any other matter the authoring Justice deems relevant. If the drafts and other material are delivered to each of the other Justices on the panel prior to or on the fifteenth day (a Tuesday) before the Issue Date, which shall be noted on drafts along with the delivery date, the Opinion on PDR and Order Withdrawing may be issued on the Issue Date without further approval unless both other Justices on the panel object. If a Justice on the panel desires to concur with or dissent from the Opinion on PDR and/or Order Withdrawing, the concurring or dissenting opinion may be issued on the Issue Date or on a later Issue Date, at the option of its author.

After the fifteenth day before the Issue Date, the Opinion on PDR and Order Withdrawing shall be circulated in the usual manner, accompanied by a Routing Slip on which the date of circulation and Issue Date have been noted. The Opinion on PDR shall be accompanied by the items enumerated above.

The first Reviewing Justice shall have 5 days to review the Opinion on PDR and Order Withdrawing before delivering it to the second Reviewing Justice, who shall have 5 days to review the drafts. Each Reviewing Justice shall note "Approval" or "Intend to Concur or Dissent," and date and initial as provided. Approval of the draft Opinion on PDR also signifies approval of the Order Withdrawing. If a Reviewing Justice is out of the office for 2 or more business days during his/her 5–day review period, then that Justice may have an extension of no more than 3 days to review the draft. Failure to act within the time allowed or extended constitutes approval of the draft Opinion on PDR and

Order Withdrawing. At the conclusion of the period, the draft and accompanying materials must be returned to the Authoring Justice.

After circulation of a draft Opinion on PDR and Order Withdrawing to all Justices on the panel, if a Reviewing Justice has noted "Intend to Concur or Dissent" and the author does not intend to substantively modify the Opinion and Order under review, then the author shall forward a copy of the draft Opinion on PDR and Order Withdrawing to the concurring/dissenting Justice for preparation of the concurring or dissenting opinion, noting thereon the Issue Date. The concurring or dissenting opinion may be issued on the Issue Date or on a later Issue Date, at the option of its author.

The author of a draft Opinion on PDR may choose to withdraw the draft and accompanying Order Withdrawing from circulation at any time. If time permits, a new draft Opinion on PDR and Order Withdrawing may be placed in circulation as herein provided.

If an approved Opinion on PDR is not issued within the thirty-day period allowed by Rule 50, the petition for discretionary review shall be forwarded to the Court of Criminal Appeals.

## NOT APPLICABLE

These deadlines do not apply (a) when a Senior Justice, Former Justice, or Active District Judge has been assigned to the panel in a case, or (b) to an opinion dismissing an appeal under the voluntary dismissal provisions of Rules 42.1 or 42.2 of the Rules of Appellate Procedure.

## DISPUTES

A dispute concerning compliance with, applicability of, or the effect of a deadline in a particular case shall be submitted to the Justices on the panel for resolution.

## MODIFICATION OR SUSPENSION OF DEADLINES

Any procedure or deadline specified herein may be changed, modified, or suspended in any case by a majority vote of the Justices on the panel. These deadlines are designed to coordinate with the existing procedure titled "Internal Deadlines for Issuing Opinions and Orders," but in the event of a conflict therewith, this procedure shall control the applicable deadline.