IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00301-CV

 

Tesmec USA, Inc.,

                                                                      Appellant

 v.

 

Allen Whittington,

                                                                      Appellee

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. C 2003-00462

 



DISSENTING Opinion TO OPINION DENYING

[Motion for] REHEARING










 

          This case now presents a near perfect
example of why the justices on a panel should wait for the considered opinion
of all three justices.  The problem that keeps it from being a perfect example
is that I cannot fully explain the significance and the intricacies of this
exemplary case.

What happened on motion for rehearing is that
the majority prepared an Opinion on Rehearing.  I prepared a dissenting
opinion.  When my draft dissenting opinion on rehearing was circulated, they
decided to substantially revise their opinion on rehearing to what you see
now.  While it would be improper for me to discuss the substance of the prior
draft, the fact that the opinion they were willing to issue changed after they
reviewed my dissenting opinion functionally explains why the opinions of all
three justices should be obtained, reviewed, and considered before any opinion
is issued.

          Nevertheless, I must dissent to the
opinion denying rehearing.  The majority purports to address only the issue
that “arose at the time our opinion was issued,” that being the issuance of an
opinion by only two of the justices.  Maj. Op. at pg. 1.  In their opinion, the
majority references only the Procedures for Internal Deadlines for Approval of
Opinions and Orders as justification for issuing an opinion and judgment on
which only two judges had voted.  They assert that the opinion was issued
“[f]ollowing the procedures.”  As I will explain, this is misleading; but that
is really not the important issue.

          The critical issue is the question of
whether one justice, on a three judge panel, has the discretion to prioritize
his or her own work or will the other two justices be allowed to arbitrarily
set a deadline to which the third justice must adhere or be deemed to have
agreed to the opinion and judgment of the other two justices.  The lone justice
is thus required to choose between compliance with internal procedures that set
an arbitrary deadline in a case or his or her own determination of what matter
has the highest priority, based on the relevant constitutional, statutory, and
procedural rules, to which time should be devoted.

          To understand this issue, I need to
provide a frame of reference for the reader.  Some of what follows has been
distilled from a number of opinions, both published and unpublished.

Choices

          We should first discuss choices.  What
are my choices when the majority’s arbitrary deadline is upon me?  The majority
apparently believes I have the following choices:


 dissenting without a separate opinion;
 dissenting with opinion to follow;
 concurring without a separate opinion;
 concurring with opinion to follow; and
 not participating.


Not participating is not an option, and I will
discuss that later.  So that leaves four choices.

     The interesting aspect of these
four choices is that each of the four indicates that I should vote on the
result that I believe is appropriate.  What this reveals, since I believe this
is a comprehensive list of all the choices they think are appropriate, is one
of two things.  Either they do not read what I write, or they believe it is
appropriate to decide on the result before conducting the research necessary to
determine the legally correct result.

     In my special note in this
case, and the others in which I have been required to utilize this procedural
tool, I have tried to explain that I have not had the time to conduct the
analysis I believe is necessary to determine if I agree or disagree with the
result.  If they took the time to read these notes, they would know that I
believe the analysis should be done before the decision.  So, either they have
not read my explanations, or they believe it is appropriate to decide upon the
result and then prepare the opinion necessary to support that result.  I have
always thought the analysis should be done first and then vote on the result.  

Not Participating is
Not an Option

          Next, I must address whether it is
appropriate for a justice on a panel to simply “not participate” in a
decision.  In none of the special notes or opinions I have issued will you find
any language from me that suggests that I am not participating in the
consideration and review of the case, in particular the opinion and judgment in
the case.  You will find only language that explains I am not yet prepared to
vote – a clear indication I want to participate in the decision.  But the
majority refuses to hold their opinion long enough for me to properly consider
it.  In Krumnow, for example, after an extensive explanation of the
problems in the case, I conclude my observations about the many issues in the
case with the following:

So, for all the reasons given, I can say no more
than I am present but not prepared to vote on the merits of this case as of the
date the opinion of only two members of the panel is being issued.

 

Krumnow v. Krumnow, 174 S.W.3d 820, 840 (Tex. App.—Waco August 24, 2005, pet. filed) (Special Note by Chief Justice Gray issued August 31,
2005).  My inability to vote at the time the opinion was being issued in this
case is no different than it has been in any of the other cases in which two
justices refused to wait for the considered vote of the third justice before
they issued their opinion.

          Furthermore, and by far the most
important observation, is that I do not believe I have the option to “not
participate” in casting a vote on a judgment disposing of an appeal.  See Texas Parks and Wildlife v. E.E. Lowrey, 155 S.W.3d 456, 2004 Tex. App. LEXIS
9824, *16-17 (Tex. App.—Waco 2004, order) (Gray, C.J., dissenting) (not
designated for publication).  I believe it is my ethical duty to participate.  “A
judge shall hear and decide matters assigned to the judge except those in which
disqualification is required or recusal is appropriate.”  Tex. Code Jud. Conduct, Cannon 3(B)(1),
reprinted in Tex. Gov’t Code Ann.,
tit.2, subtit, G app. B (Vernon 1997).  A single judge may, however, decide a
motion; thus, participation in the decision of every motion is not necessary to
fulfill this ethical requirement.  See Tex.
R. App. P. 10.4(a) (a single judge may decide a motion).  

          I know that Justice Vance holds an
opinion to the contrary on whether he must participate in or recuse/disqualify
himself from reviewing and voting on opinions.  But I have waited for months
for Justice Vance to participate in the decision of a case, and notwithstanding
that he may have initially noted that he was not participating, to this date he
has ultimately always cast a vote.  

I do not believe I have the right to veto the
issuance of any opinion as Justice Vance has implied in his opinions.  Texas
Parks and Wildlife v. E.E. Lowrey, 155 S.W.3d 456, 2004 Tex. App. LEXIS
9824, *14 (Tex. App.—Waco 2004, order) (Vance, J., concurring) (not designated
for publication); Pac. Emplrs. Ins. Co. v. Mathison, No.
10-04-00314-CV, 2005 Tex. App. LEXIS 8650, *11 (Tex. App.—Waco Oct. 19, 2005,
no pet.) (Vance, J., concurring); Park v. Montgomery County, No.
10-04-00231-CV, 2005 Tex. App. LEXIS 8646, *12-13 (Tex. App.—Waco Oct. 19,
2005, pet. filed) (Vance, J., concurring). 
I simply believe that I have the discretion to prioritize what I choose to work
on based upon changing events and the relative priorities and deadlines set by
the legislature and high courts and not some arbitrary deadline created by an
internal rule of questionable benefit for the Court.  See Johnson v. Baylor Univ., 2006 Tex. App. LEXIS 1310, *37-38 (Tex. App.—Waco Feb. 15, 2006, no pet. h.) (Special note by
Chief Justice Gray); Cathey v. Meyer, 115 S.W.3d 644, 673-674 (Tex.
App.—Waco 2003), aff’d in part and rev’d in part, Meyer v. Cathey,
167 S.W.3d 327 (Tex. 2005).

          While the majority may accept “not
participating” as an option—they know I do not believe it to be an option.[1]

Procedures and More
Procedures

Now for a little additional background on this
case leading to the issuance of an opinion which, for all purposes, appears to
have been joined in by me at the time it was issued.  My special note in this
case quotes the e-mail in which I notified the author of the opinion and the
majority what my position was on the proposed opinion and judgment of the Court
– that I was not yet prepared to vote.

Other Internal Procedures

          But the misleading part of the
majority opinion is in the statement that the opinion was issued “[f]ollowing
the procedures” adopted on April 26, 2005, making it seem that they are the
only relevant procedures.  They are not.  The date the opinion was actually
issued is January 18, 2006.  But to issue on this date, according to other
procedures adopted by the majority, “Internal Deadlines for Issuing Opinions
and Orders,” the opinion should have been signed and returned to the opinion
secretary by 10:00 a.m. on January 17, 2006, the day before it was to issue.  I
had checked with the opinion secretary well after the deadline and neither the
opinion in this case nor the opinion in Texas Genco had been given to
her.  Texas Genco v. Valence Operating Co., No. 10-04-00365-CV, 2006
Tex. App. LEXIS 448 (Tex. App.—Waco Jan. 18, 2006, no pet. h.).  Thus, under
the internal rules, unless an exception was approved, neither opinion should
have had an issue date of January 18, 2006.

          The reason I had checked with the
opinion secretary on January 17, 2006 regarding these two opinions was for the
express purpose of determining how they reflected the substance of my e-mail to
the author at a time when something could be done about it if my position was
not accurately reflected in the signature block of the opinions as issued.  So
when I discovered on January 17, 2006 that the opinions were not completed by
the deadline for issuing them on January 18, 2006, I was relieved to know that
they had decided to not issue them the next day.  Then, on January 18, 2006, I
learned three critical facts:  (1) that the opinion in this case had been
prepared for issuance that day; (2) that the opinion in this case had been
prepared to reflect that all three justices joined in it, i.e., no indication
or qualification upon my position in regard to voting on the opinion and
judgment in the case; and (3) that Justices Vance and Reyna had joined in taking
action without a meeting to avoid the signing deadline on not one, but two
opinions and had issued both opinions on January 18, 2006, without even
attempting to notify me that they intended to do so.

          Thus, on the issue date, but
prior to the issuance of the opinion, and immediately after I learned (1) and
(2) above, I contacted Justice Reyna’s staff and took all actions that I could
to contact Justice Reyna, including a direct attempt to communicate with him in
his office, but he had left, and discussing the need to contact him with his
staff, e-mail, office phone/voice mail, home phone/voice mail, and cell phone/voice
mail.  I wanted to communicate to him my belief that his issuance of the
opinion was an affirmative representation that I joined in it, when he knew
that I had not joined that opinion.  I attempted to communicate the same
information to Justice Vance about Justice Reyna’s case.  I would have been
telling Justice Vance the same thing about Texas Genco but, at that
time, I did not yet know that Justice Vance had already taken the same steps to
issue the opinion in Texas Genco.  And I had not yet learned of
the above-described item (3).  I did not receive a copy of that document until
around 4:00 p.m., when it was too late to pull the opinions because they were
deposited in the mail at that time.

          Justice Reyna and Justice Vance knew
my position on the opinions at the time they signed their respective opinions
and when they also joined together to issue both opinions as an exception to
the regular procedure regarding circulation deadlines on January 18, 2006.

Problems With Implementing Their Procedures

          Further, the majority neglects to
mention the inconsistencies and problems they were having using their routing
system.[2] 
In this case, I returned all the materials placed in circulation to Justice
Reyna.  Weeks went by before I received the routing slip indicating the revised
issue date and implying that he did not intend to modify the majority opinion. 
Apparently, due to the complexity of the dual circulation, multiple deadlines,
the variety of extensions, and the total failure to address what happens when
there is more than one concurring or dissenting opinion, there have been
on-going efforts to interpret and clarify their rules, such as what stays in
circulation and who keeps originals, since they were first approved.  Indeed,
the problems implementing the system are so great Justice Vance has proposed
revised circulation procedures to try to fix some of the problems.

          The majority also feels compelled to
mention the nine weeks between the date the original opinion was placed in
circulation and the date it was issued.  I have resisted the temptation to
respond with a detailed listing of everything else that I worked on during this
period.  Some of the special notes I have issued have discussed more
specifics.  It should be sufficient to say that I have worked on the matters
that I thought had the highest priority with due regard to keeping the bulk of
the Court’s cases moving as expeditiously as practical.

Conclusion

          I would withdraw the opinion issued by
only two members of a three judge panel and do what I have done on all the
cases assigned to my chamber – wait until I have the considered vote of all
three justices on a panel before an opinion is issued and not mislead the
parties and the public by issuing an opinion which appears as though all members
on the panel join in it.  Accordingly, I dissent to the denial of the motion
for rehearing.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed March 22, 2006

Publish









[1] 
I recognize that under exceptional
circumstances a judgment voted upon by only two intermediate appellate court
justices has been approved and affirmed.  See Dickinson State Bank v.
Ogden, 624 S.W.2d 214, 222 (Tex. Civ. App.—Houston [1st Dist.] 1981), rev'd
on other grounds, 662 S.W.2d 330, 27 Tex. Sup. Ct. J. 13 (Tex. 1984) (on
rehearing); Hoyt v. Hoyt, 351 S.W.2d 111, 114 (Tex. Civ. App.—Dallas
1961, writ dism'd w.o.j.).  These opinions are different than our situation because
the third justice in those cases was not available.  In the situations Justice
Vance has chosen to rely upon these cases, I was not unavailable.  In the
two-justice decisions from this Court, Justices Vance and Reyna simply refused
to wait for me to vote.  Under their theory, if the two of them agree on a
result, they do not even have to show me their opinion before it is issued. 
They only need me as the third justice on the panel at the time it is
submitted.  Tex. Gov’t Code Ann.
§ 22.222 (Vernon 2004).





[2]  
Until February 6, 2006, my chamber
continued to use the circulation procedure, with one change, that was in place
when I joined the Court in 1999.  The change I made to that procedure had been
made and the system continued in use since January 2004 when Justice Reyna
joined the Court.  The system seemed to work very well.  When the other
justices refused to review my draft opinions unless I complied with their
procedures, it resulted in a delay of approximately four months in the target
date for the issuance of approximately a dozen opinions in circulation at that
time.