TEXAS A & M UNIVERSITY,
Appellant,

v.

Ryan BADING, Javier Garza, Aaron Horn, Joe Jackson, Andrew McDow, Michael Rusek, Ty Sorell, Scott–Macon, Ltd., Texas Aggie Bonfire Committee, Trevor Jon Saari, H.B. Zachry Company, Zachry Construction Corporation, Harry Eugene Couch, Jr., et al., Appellees.

No. 10–05–00139–CV.

Court of Appeals of Texas, Waco.

Aug. 15, 2007.

Opinion Delivering Special Note Aug. 16, 2007.

Opinion on Rehearing Nov. 14, 2007.

S. Ronald Keister, Asst. Atty. General–Tort Litigation Div., Ryan D. Clinton, Atty. General Office–Asst. Solicitor General, Austin, Andy McSwain & Dan MacLemore, Fulbright Winniford PC, Waco, for appellant.

Britt B. Harris, Harris Hilburn & Sherer LLP, John H. Kim, The Kim Law Firm, Robert D. Brown, Donato Minx & Brown, PC, Houston, Randy A. Nelson, Thompson Coe Cousins & Irons, Michael C. Steindorf, Jeff Richardson, Ben Taylor, Fulbright & Jaworski L.L.P., Stephen B. Smith, Smith & Knott, Dallas, J. Mike Johanson, Johanson & Fairless LLP, Sugar Land, Scott J. Scherr, Payne Watson Miller Malechek & Scherr, Bryan, Darrell L. Keith, Keith Law Firm PC, Geno E. Borchardt, McGartland & Borchardt LLP, Jeff Kobs, Kobs, Haney & Hundley, LLP, Fort Worth, Charles V. Lyons, Rhodes & Vela LLP, San Antonio, Patrick Smith & Scott Smith, Smith, Smith, Smith LLP, Mesquite, for appellees.

Nancy Braus, Hallettsville, pro se.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

■ In 1999, the annual bonfire being built by students at Texas A & M University collapsed, killing 12 students and injuring 27 others. Several plaintiffs, including estates of students, injured survivors, and relatives of affected students, sued the Texas Aggie Bonfire Committee, Scott–Macon, Ltd., Zachry Construction Corporation and related parties (all collectively referred to as "Appellees"), and other defendants for wrongful death, personal injury, and related claims. Appellees in turn brought certain claims against Texas A & M University, a state entity, which filed pleas to the jurisdiction based on sovereign immunity. When the trial court denied its pleas, the University brought this interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(8) (Vernon Supp.2006).

■ We review de novo the trial court's denial of a plea to the jurisdiction based on sovereign immunity, as the question of whether a court has subject matter jurisdiction is one of law. Hoff v. Nueces County, 153 S.W.3d 45, 48 (Tex.2004) (per curiam); see also Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225–28 (Tex.2004).

The claims against the University can be divided into three general categories: those seeking contribution and/or indemnity; those seeking a finding of proportionate responsibility under Chapter 33 of the Civil Practice and Remedies Code;[1] and

---

1. The parties agree that the claims asserted here are governed by the 1995 version of section 33.004, which was amended in 2003. See Act of May 8, 1995, 74th Leg., R.S., ch.

those founded in contract. The University maintains that it is immune from each category of claims. Specifically, it says that the Appellees cannot point to a legislative enactment providing a clear and unambiguous expression of a waiver of sovereign immunity as to any of the claims. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695–96 (Tex.2003). We agree with the University.

The Attorney General has amply demonstrated in the briefs, and supported in oral argument, the proposition that because there is no statute or resolution of the Legislature authorizing them, the doctrine of sovereign immunity bars all of the Appellees' claims, whether for contribution, indemnity, a determination of proportionate responsibility, or based in contract.

We sustain the University's issues and reverse the trial court's order. We render an order granting the University's pleas to the jurisdiction and dismissing all of Appellees' trial-court claims against the University for lack of jurisdiction. Costs of the appeal are assessed against and shall be paid as follows: 50% by Zachry Construction Corporation, 25% by the Texas Aggie Bonfire Committee, and 25% by Scott–Macon, Ltd.

## SPECIAL NOTE

TOM GRAY, Chief Justice.

A majority of this Court has adopted a set of procedures under which they will issue an opinion as a unanimous opinion upon the vote of only two of the three duly elected justices of this Court. By this process, they have taken it upon themselves to alter the plan for justice set up in the Constitution, Statutes, and Rules enacted by, and secured by, our founders, the voters, the legislature, and the members of this State's two highest courts. Two, acting as one, have altered the process of judicial review. It is wrong on many levels.

### DISCUSSION

The failure to allow me the time that I need to review a particular decision has occurred sporadically over the last several years, all subsequent to the most recent recomposition of the Court in 2003. No useful purpose will be served to rehash what I have said before, but if the reader is interested, the following is the litany of citations on the issue. *Texas Dep't of Transp. v. York,* 234 S.W.3d 212 (Tex. App.-Waco 2007, no pet. h.) (Special Note by Chief Justice Gray issued Aug. 9, 2007) (publish) (no LEXIS citation for the Special Note as of this date); *Johnson v. Baylor Univ.,* 188 S.W.3d 296, 311–312 (Tex.App.-Waco 2006, pet. denied) (Special Note by Chief Justice Gray); *Jones v. State,* 188 S.W.3d 737, 738–739 (Tex.App.-Waco 2006, no pet.) (Special Note by Chief Justice Gray); *Tex. Genco, LP v. Valence Operating Co.,* 187 S.W.3d 118, 125–126 (Tex.App.-Waco 2006, pet. denied) (Special Note by Chief Justice Gray issued Jan. 25, 2006); *Tesmec USA, Inc. v. Whittington,* No. 10–04–00301–CV, 2006 WL 827849, at *10, 2006 Tex.App. LEXIS 748, *30–31 (Tex.App.-Waco Jan. 18, 2006, pet denied.) (Special Note by Chief Justice Gray issued Jan. 25, 2006); *Park v. Montgomery County,* No. 10–04–00231–CV, 2005 WL 2667488, at *3, 2005 Tex.App. LEXIS 8646, *1–2 (Tex.App.-Waco Oct. 19, 2005, pet. granted) (Special Note by Chief

136, § 1, sec. 33.004, 1995 Tex. Gen. Laws 971, 972–73 (amended 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 33.004 (Vernon Supp.2006)). The 1995 version permitted a determination of percentage of responsibility only for parties who were joined in the case or had settled, whereas the current version permits that determination without the party being joined. The University was joined as a party.

Justice Gray); *Pac. Emplrs. Ins. Co. v. Mathison*, No. 10–04–00314–CV, 2005 WL 2665454, at \*3, 2005 Tex.App. LEXIS 8650, \*1–2 (Tex.App.-Waco Oct. 19, 2005, pet. denied) (Special Note by Chief Justice Gray); *Krumnow v. Krumnow*, 174 S.W.3d 820, 830–842 (Tex.App.-Waco 2005, pet. denied) (Special Note by Chief Justice Gray issued Aug. 31, 2005).

All the prior notes have one thing in common; the majority utilized internal operating procedures they had passed as the justification for what they were doing. This one is, in my opinion, different. Although they will pay lip service to the application of the procedures, the only procedure they are following is that a majority can "modify" the procedures, which should be read as "ignore" the procedures, if they decide to do so.

While I was not exactly shocked when they decided to issue their opinion in this proceeding without compliance with the standard procedures under their circulation policy, I was surprised they contend it was in any way in compliance with that policy. What this means is that the procedure necessary to issue an opinion, as a unanimous opinion, is whatever a majority votes it to be at any given time. I cannot accept that as being the proper way to decide a proceeding presented to us for review.

My response to the majority draft has been and continues to be "I am not yet ready to vote." They were not satisfied with this response so they voted to issue their opinion, representing that it was a unanimous opinion. That representation is not accurate.

The parties and others, under these circumstances, are, however, entitled to know why I am not yet ready to vote. There are a number of factors which came together to cause this delay. While I will not try to discuss all of them, or even to list them, one factor was the press of other work. I have publicly noted that Justice Reyna had an inordinate number of cases pending that needed to be resolved. *Newton v. State*, —— S.W.3d ——, ——, No. 10–06–00160–CR, 2007 WL 1704904, at \*7, 2007 Tex.App. LEXIS 4634, \*19 (Tex.App.-Waco June 13, 2007, no pet. h.) (publish). Thus, in the exercise of my discretion, I felt it was more important to continue to process everything from his chamber that I could without delay.

In essence, I focused on the number of dispositions and not the order in which we received them or in which they were presented to me. Justice Reyna has made significant strides since that date to reduce his backlog of cases, posting the most dispositions for any chamber at this Court in each of the last two months. Because Justice Vance also had more cases pending than I did, and because I had also been suggesting to him that we needed to do what we could to improve our overall disposition of cases, I likewise continued to process his cases and other matters as quickly as I could.

Then why not expedite the processing of this case and *Texas Department of Transportation v. York*, 234 S.W.3d 212 (Tex. App.-Waco 2007, no pet. h.) (Special Note by Chief Justice Gray issued Aug. 9, 2007) (publish) (no LEXIS citation for the Special Note as of this date).

This case and *Texas Department of Transportation v. York* were both argued on June 6, 2007. Draft opinions were subsequently presented to me for review. I had already spent a good deal more time with *Texas A & M University v. Bading* than I had with *Texas Department of Transportation v. York*. But with both drafts on my desk for review, and both involving the issue of sovereign immunity, there were issues that I identified that I

felt were worthy of considerable research, thought, and reflection; considerably more than I had given either until I saw them presented together in draft opinion form.

It was at that point that I realized I had a scheduling problem. There are a number of priorities, some conflicting, for the disposition of cases as well as other demands on a judge's time. *See Cathey v. Meyer*, 115 S.W.3d 644, 673–674 (Tex.App.-Waco 2003) (Gray, J., dissenting), *rev'd in part and aff'd in part, Meyer v. Cathey*, 167 S.W.3d 327 (Tex.2005). But the complexity of what I needed to resolve before I decided how to vote in these two sovereign immunity cases, both of which were drafted as precedent-setting opinions, required more time than I had available under the procedures adopted by the majority, unless I was willing to ignore everything else, including several termination of parental rights cases. I was not. But even then, these are two cases that involve some pretty broad concepts and the need for judicial reflection that simply cannot be put on the deadline of a calendar with a specific date.

In fact, one of the complexities that hit me with regard to the opinion in this proceeding is the summary nature of the opinion, completely passing over a discussion of a number of issues raised by the parties in their briefs. Thus it appears, in what would under any other circumstance be a memorandum opinion, the majority is purporting to establish some precedential decision. I wanted to investigate further exactly what the scope was of the precedent we were purporting to establish.

But knowing what may come, I did what I believe is within my discretion, and worked on the cases in the manner and under the priorities I thought was appropriate. Because the research and writing that I was doing in *Texas Department of Transportation v. York* was assisting me in grappling with the issues in this case, and because the draft in this case had not been circulated under the deadlines and restrictive due dates of the circulation procedure, until very recently I thought I had more time before the opinion in this case would be issued. And notwithstanding that this case is an accelerated appeal but also recognizing that there are other pending appeals that will prevent an underlying trial on the merits, I chose to work on *Texas Department of Transportation v. York* first.

The status of my draft and, to some extent, the status of my research in *Texas Department of Transportation v. York* is reflected in the Appendix to my Special Note in that proceeding. *Texas Dep't of Transp. v. York*, 234 S.W.3d 212 (Tex. App.-Waco 2007, no pet. h.) (Special Note by Chief Justice Gray issued Aug. 9, 2007) (publish) (no LEXIS citation for the Special Note as of this date).

And it is more than a simple vote on whether I agree or disagree with a result. I believe I have the right to vote on the reasons for a result. Who knows, I may actually convince one of the other justices to flip and join me in a different result, or possibly the same result but for an entirely different precedent-setting reason. Such is the nature of a well thought out decision by a three judge panel rather than rushing it out the door while there is at least one justice who joins the vote at a particular point in time. If that was acceptable, why have three votes on anything? A justice could say: "Let me get just one vote to join me and issue it, even call it unanimous." A court could really expedite "justice" if that was acceptable. One theory on why to proceed in the fashion chosen by the majority is to prevent the potential for a justice to change his mind on the result, or the basis of his decision, when confront-

ed by an alternate analysis from the third justice.

## CONCLUSION

So, here we are in another of a handful of proceedings, with the majority issuing an opinion before I am ready to vote. I think it is a bad procedure, but I am unable to prevent it. I apologize to the parties, the bench, the bar, the public, and the higher courts that I was unable to complete the analysis of the majority opinion that I would have liked to do. I had the best of intentions. It will have to suffice that I am not yet ready to vote, but I know that I do not join the majority in their purported unanimous precedent-setting opinion and the procedure which led to its issuance as such.

## OPINION ON REHEARING

BILL VANCE, Justice.

The Zachry defendants have filed a motion for rehearing that presents ten issues:

1. Whether we addressed every issue raised and necessary to final disposition of the appeal. TEX.R.APP. P. 47.1.
2. Whether we considered only the Attorney General's briefs and oral argument.
3. Whether we should have addressed cross-issues properly briefed by the Zachry defendants that are necessary to final a disposition of the appeal. *Id.*
4. Whether we should have addressed a specific cross-issue, *i.e.*, does submission of the University's percentage of responsibility merely as a responsible third party require a waiver of sovereign immunity. *Id.*
5. Should we have granted the University's request for a severance? *Id.*

6. Whether we misapprehended the record by reversing a single order when there were several.
7. Whether we incorrectly referred to the "judgment of the court below" when there was none; they were "orders."
8. Did we correctly designate our opinion under Rule 47.2? *Id.* 47.2.
9. Did we violate Rule 47.2(a) by including Chief Justice Gray as a justice participating in the decision? *Id.* 47.2(a).
10. Did we violate appellate due process due to internal disagreements among the justices of this court?

The Texas Aggie Bonfire Committee and Scott–Macon, Ltd. have filed a joint motion for rehearing, basically adopting issues one through nine set out above. Their tenth issue addresses internal operating procedures, but does not refer to "appellate due process." They assert two additional issues:

11. Whether our opinion conflicts with other Texas and out-of-state decisions regarding their contribution claims against the University.
12. Whether the Texas Tort Claims Act provides a waiver of sovereign immunity for their contractual indemnity claim.

We requested a response to both motions. The University's states: "No legal foundation supports Appellees' contribution, contract, and 'responsible third party' claims against Texas A & M University. As a result, the Court was right—this case is ultimately quite simple: because there is no clear and unambiguous legislative or constitutional waiver of the University's sovereign immunity for Appellees' third-party claims, the Court properly dismissed their claims for lack of subject-matter jurisdiction. And since that unremarkable

conclusion disposed of *all* of Appellees' claims, nothing else needed to be said in the Court's opinion or judgment." (Emphasis in original.)

We will refer to the movants as "Appellees" unless we are addressing an issue not common to them. Because the first eight issues presented in the motions are virtually identical, we will address them together. Then we will address the two additional issues presented by the Committee and Scott–Macon. Finally, we will address the common ninth and tenth issues concerning the internal procedures that led to our opinion.

## FAILURE TO ADDRESS ALL ISSUES

Appellees' issues one, three, and four assert that we did not address all of the issues necessary to a disposition of the appeal. Because we agree with the University's position as quoted above, we overrule issues one, three, and four.

## CONSIDERATION OF ONLY APPELLANT'S BRIEFS AND ARGUMENT

■ Appellees apparently believe that we considered only the Attorney General's briefs and argument. If so, they misread our opinion. A claim that sovereign immunity has been waived requires a showing of a clear and unambiguous expression of waiver. The Attorney General, on behalf of the University, pointed out that Appellees had failed to identify such a waiver, and we stated our agreement. We fully considered the extensive briefs and arguments of all parties in reaching our decision.[1] We overrule issue two.

1. We again note that our decision is based on a prior version of Section 33.004 of the Civil Practice and Remedies Code, no longer in effect, which allowed findings of responsibility of "persons" over which the court has

## SEVERANCE

Issue five asserts that we failed to address a severance question. The University responds that it did not raise severance as an issue on appeal. We overrule issue five.

## ONE "ORDER" OR MORE

Appellees' issues six and seven question our reference to the "judgment" of the court below and whether we intended to reverse various "orders" of the trial court. This point is well taken, and we will modify our judgment accordingly. Issues six and seven are sustained.

## OPINION OR MEMORANDUM OPINION

We designated our opinion as an "Opinion" under Appellate Rule 47.2 because the parties presented the appeal as one of first impression. Although Appellees question whether we should have presented more than "basic reasons" for our decision, we believe that the opinion adequately addresses the issue of the University's claim of sovereign immunity and, as the University points out, sustaining that claim necessarily disposes of all other claims. We thus reject their assertion that we should have expounded further on other issues. We overrule issue eight.

## CONTRIBUTION CLAIMS

■ The Committee and Scott–Macon believe that the Tort Claims Act waives sovereign immunity as to their claims against the University for contribution. The University says that the Tort Claims Act "makes *no mention of contribution* claims" nor does the statute "even *imply*

jurisdiction. We express no opinion about whether an entity that enjoys sovereign immunity can be designated as a responsible third party under the current version.

consent to contribution claims—much less *express* consent to such claims in a clear and unambiguous manner." (Emphasis in original.) We again hold that because there is no clear and unambiguous waiver of sovereign immunity as to such claims, they must be dismissed. We overrule issue eleven.

## CONTRACTUAL INDEMNITY CLAIMS

Scott–Macon says that the University's sovereign immunity has been waived by the Tort Claims Act for its contractual indemnity claims. The University again points to the absence of a reference to such claims in the Act and to the absence of authority for this "untenable argument." We again hold that because there is no clear and unambiguous waiver of sovereign immunity as to such claims, they must be dismissed. We overrule issue twelve.

## INTERNAL PROCEDURES

■ Appellees assert in issue nine that we violated the appellate rules by noting Chief Justice Gray's name as a participating justice. The University does not respond directly to this issue.

Appellees are incorrect. As we will demonstrate, Chief Justice Gray approved the opinion under the existing rules of the court and was thus shown as a participating justice.

Ordinarily, we do not publish our internal operating rules or internal discussions, votes, positions taken, or writings.[2] However, because Chief Justice Gray has questioned the legality of our internal procedures and Appellees have, by including these issues in their motions for rehearing, raised the potential for review of our procedures by the Texas Supreme Court, we are compelled to discuss and defend our internal rules and how they were applied in this case.

■ The Tenth Court of Appeals is a three-justice court. TEX. CONST. art. V, § 6; TEX. GOV'T CODE ANN. §§ 22.201(k), 22.216(j) (Vernon 2004 & Supp.2006). Unless a justice is recused or disqualified, we sit as a regular panel of three justices. A majority of a panel constitutes a quorum and the concurrence of a majority of the panel is necessary for a decision. TEX. CONST. art. V, § 6 ("The concurrence of a majority of the judges sitting in a section [panel] is necessary to decide a case."); TEX. GOV'T CODE ANN. § 22.222(a), (c) (Vernon 2004). We have adopted Local Rules to supplement the Rules of Appellate Procedure. TEX.R.APP. P. 1.2(a); 10TH TEX. APP. (Waco) LOC. R. 1–19. We have also adopted Internal Administrative Rules (IAR) to govern our administrative duties. TEX. GOV'T CODE ANN. § 22.223 (Vernon 2004).[3]

When an appeal is filed, it is assigned by the clerk to one of the three justices on a strict-rotation basis.[4] IAR para. 8. The

---

**2.** In an earlier case in which a party, in a motion for rehearing, claimed that an opinion on the affirmative vote of two justices obviated potential appellate jurisdiction of the Supreme Court of Texas and was erroneous, we attached the then-current version of our "Procedures for Internal Deadlines for Approval of Opinions and Orders." *Tesmec USA, Inc. v. Whittington,* 192 S.W.3d 178, 183–88 (Tex. App.-Waco 2006, pet. denied) (op. on rehearing). The Procedures have since been amended and have proven to be workable.

**3.** Court-adopted rules cannot be inconsistent with the constitution. *See Starnes v. Holloway,* 779 S.W.2d 86, 96 (Tex.App.-Dallas 1989, writ denied). "A statute controls over a procedural rule." *In re Chu,* 134 S.W.3d 459, 466 (Tex.App.-Waco 2004, orig. proceeding).

**4.** The exception is companion cases that are assigned to the same justice.

responsibility for the initial review of motions and other pre-submission matters rests with the assigned justice, who also prepares an initial draft of an opinion on the merits. *Id.*

We have adopted, and amended, "Procedures for Internal Deadlines for Approval of Opinions and Orders" (Procedures), which set deadlines for the approval or non-approval of the various types of opinions and orders that the court issues. In an appeal such as this, the Procedures specify that the opinion will be issued on the first Wednesday after 42 days (six weeks) after the date it is distributed by the author to the remaining justices. If a reviewing justice does not indicate an intent to concur or dissent by four weeks prior to the issue date, or having indicated such does not distribute a proposed concurring or dissenting opinion by one week prior to the issue date, that justice is deemed to have approved the draft opinion.

This case was filed on March 9, 2005. From that date until June 11, 2007, over two years, the case was assigned to Chief Justice Gray. During that period, several letters covering a variety of subjects were circulated by Chief Justice Gray, approved by the other justices, and transmitted to the parties by the clerk. Chief Justice Gray recommended that the case be advanced and submitted without oral argument, but a majority of the panel voted to hear oral argument. After submission, Chief Justice Gray authored and distributed a draft opinion.[5] It did not receive a second vote. Justice Vance then drafted a competing opinion, which Justice Reyna joined and which was delivered to Chief Justice Gray on June 11, 2007. At that time, the designated author was changed.

On June 22, we received an email from Chief Justice Gray stating: "*TAMU v. Bading,* 10–05–00139–CV; I thought I was about ready to put my opinion in circulation but I have decided that it is not ready yet." On July 11, Justice Vance inquired of Chief Justice Gray:

> Can you tell me when the dissent will be ready, or should I formally circulate the opinion in order to establish a deadline? It has been a month today since the opinion was circulated and almost two weeks since you: "thought I was about ready to put my opinion in circulation but I have decided that it is not ready yet."

After additional exchanges, Justice Vance proposed to "issue the opinion on July 25, which is the first Wednesday after six weeks after the opinion was circulated." After still more exchanges, Chief Justice Gray wrote on July 20: "My formal response to your proposed draft is that I am not yet prepared to vote." In response to Justice Vance's offer of an additional week, so that the opinion would issue on August 1, Chief Justice Gray sent an email saying:

> I appreciate the implied offer but I have could not say any more definitively that I could be ready by then than I could by next Wednesday. The more time I have, the higher probability that I could finish. For example, I have little doubt that I could be ready by the end of August, but due to the uncertainties of life, including what could happen between now and then that is not within my control, could make no promises. twg

On July 23, Chief Justice Gray wrote: "there is no reason not to extend the date to the final issuance date in August upon my implied request." Justice Vance replied: "I'll meet you 60% of the way to

---

**5.** Demonstrating sufficient time to consider the appeal.

August 29 and schedule it to issue on August 15.... An August 15 issue date also allows considerably more time than the deadlines provide." Chief Justice Gray responded:

> You do what ever you want to do, but my position always has been and remains that I am unable [sic] commit to any specific date to be ready to vote. Life just does not offer that level of certainty. I may or may not be ready by that date.
>
> twg

Accordingly, on July 23, a majority of the justices on the panel, as authorized by the Procedures,[6] modified the deadlines as follows:

### No. 10–05–00139–CV

### Texas A & M University v. Bading

This cause was submitted on June 5, 2007. A proposed opinion distributed by Chief Justice Gray, without a Distribution Date or a Proposed Issue Date, was not joined by either of the other Justices.

An alternate draft opinion by Justice Vance was approved by Justice Reyna on June 11 and the designation of authorship for the case changed. The alternate draft opinion was delivered to Chief Justice Gray on June 11, 2007.

Paragraph 3.01 of the Procedures for Internal Deadlines for Approval of Opinions and Orders allows six weeks from distribution of an opinion until the Proposed Issue Date. More than six weeks have elapsed since two Justices approved the draft majority opinion in this case.

Applying Paragraph 8.01 of the Procedures, the Issue Date for the majority

opinion in this case is set for Wednesday, August 15, 2007. The Final Response Date for purposes of Paragraph 4.01 of the Procedures is set as August 8, 2007, and *failure to act by that date constitutes approval of the draft majority opinion authored by Justice Vance to be issued on August 15, 2007.*

This modified procedure is adopted this 25th day of July, 2007.

---

Tom Gray

s/ *Bill Vance*

Bill Vance

s/ *Felipe Reyna*

Felipe Reyna

(Emphasis added.) Chief Justice Gray wrote a handwritten "dissent" to the action of the majority in adopting the modified procedure.

Having received no response by August 8, Justice Vance wrote Chief Justice Gray on August 10:

> Per your request, this is a courtesy notice in advance of the issuance of the opinion in TAMU v. Bading without your response under the deadlines.
>
> This accelerated interlocutory appeal was argued and submitted on June 6, over nine weeks ago. Your proposed opinion did not garner a majority of the votes. An opinion that I drafted was approved by a majority of justices on June 11, over eight weeks ago. To date, no concurring or dissenting opinion has been given to us for our review. You have said, however, "You do what ever you want to do, but my position always has been and remains that I am unable commit to any specific date to be ready to vote. Life just does not offer that

---

**6.** The relevant part of Paragraph 8.01 provides: "Any procedure or deadline specified herein may be changed, modified, or suspend- ed in any case by a majority vote of the Justices on the panel."

level of certainty. I may or may not be ready by [August 15]. twg"

In light of all the pending matters arising out of the same underlying event, the parties are entitled to be promptly informed of the decision we have reached.

Under the modified procedure approved on July 25, the Final Response Date in this case was August 8, so the opinion will issue as a unanimous opinion on August 15. ("failure to act by [the Final Response Date] constitutes approval of the draft majority opinion authored by Justice Vance to be issued on August 15, 2007") [sic]

I trust that the proposed opinion that your [sic] circulated back in June correctly reflected your view of how the legal issues presented in this appeal should be resolved. It should be easy to convert that to a concurring opinion to be issued next week with my opinion.

Chief Justice Gray replied:

Bill,

Your email begins with multiple false premises and continues in that vein throughout. If you "do what you want to do," as I feel certain you, will empowered as you are with the second vote from Felipe, I will again have to follow it up with a special note, as I did last week in TxDot v. York.

twg

The opinion was issued as scheduled on August 15.

Various rules impose deadlines at every step of the appellate process, from the overruling of a motion for new trial by operation of law after 75 days to the automatic denial of a motion for rehearing in the Texas Supreme Court if not decided within six months.[7] *See, e.g.,* TEX. CONST. art. V, § 31(d); TEX.R. CIV. P. 329b(c). Furthermore, Appellate Rule 41.1(c) allows for the issuance of an opinion by two justices, after argument, when one cannot participate "for any reason." TEX.R.APP. P. 41.1(c). This case was submitted on oral argument on June 6, 2007.

Under the rules governing the issuance of opinions, Chief Justice Gray approved the draft majority opinion. He alone decided not to affirmatively vote to join the opinion or to dissent from or concur in the judgment in this case in a timely manner. He is not disqualified; he has not recused himself. Thus, he remains a member of the panel assigned to the case. The decision reflected by the "Special Note" is his alone.

We overrule issue nine.

In issue ten, Appellees say that our internal operating procedures have rendered them "innocent victims" in a way that violates their "appellate due process" rights. The University responds by noting that no authority is cited in support of this issue. Nothing is presented for review. We overrule issue ten.

## CONCLUSION

We have overruled rehearing issues one through five and eight through twelve. We sustain issues six and seven. We withdraw our judgment dated August 15, 2007, and issue a modified judgment to reverse the "orders" of the trial court denying the University's pleas to the jurisdiction and render an order granting the University's pleas and dismissing all of Appellees' trial-court claims for lack of jurisdiction. In all

---

7. According to an informal survey that we conducted, the Texas Supreme Court and approximately half of the fourteen courts of appeals have some kind of internal deadlines for the approval of opinions.

other respects the Appellees' motions for rehearing are overruled.

Additional Special Note by Chief Justice GRAY.

## SUPPLEMENT TO SPECIAL NOTE ISSUED AUGUST 16, 2007

TOM GRAY, Chief Justice.

I will begin with my conclusion and then provide comments on the procedure and the issues.

### CONCLUSION

Because there are so many statements made in the Opinion–on–Rehearing with which I disagree, and which need explication and would require additional research; because the legal analysis is only perfunctory and incomplete; because the actual issues raised by the appellants have not been properly addressed;[1] and because for me to address all of this would require far more time than the internal operating procedures, which the Court will purport to use to issue its opinion, allow, I simply note that I continue to disagree with the Court on the manner and method of its disposition of the merits of this appeal.

### COMMENT ON PROCEDURE

I will make one additional observation for readers that are not trained in the law which will probably be obvious to the bench and bar. On page six of the Opinion–on–Rehearing, which at that point is already twice as long as the original "Opinion," the majority undertakes to "defend our internal rules and how they were applied in this case."

A defense is common to persons trained in the law. There are a number of important aspects to a defense; two key aspects will be discussed; (1) timing and (2) advocacy. What is a bit strange about the timing of the majority's "defense" is that it is made now but is in response to the position taken when the Opinion was issued. It seems that when the Opinion was issued would have been the time to address the procedure by which they were issuing the Opinion and knowingly misrepresenting that I had joined it.

And as for the advocacy, in this instance the advocacy is the work of a trained legal professional. The legal advocate is trained to present the very best position for their client by selecting and presenting the facts or inferences that support their client's version of the events. And in looking forward to a need to defend, the advocate can create the facts by preparing emails that will ultimately be used for the defense. In this regard, I also make two comments. I have no client for which I feel the need to assert a position or defense. I can only state what happened and how it affected, or may have affected, the outcome; two voted, not three. And the second comment is that there is a very different story of the events as told by Justice Vance. The other version has other emails and written responses that were exchanged that a skilled advocate would present to refute the story of the events as told by Justice Vance.

This brings us back to my earlier observation. I have no client for which I feel the need to assert a position or defense. To the extent that what went on in the voting, or not voting, on the result in this

---

1. For example, one of the issues is whether the appellees must be able to point to a waiver of immunity if the appellees are not seeking a money judgment from the State. Justice Morris recently authored an opinion which recognized the merits of such a distinction. *See Anderson v. City of McKinney*, 236 S.W.3d 481 (Tex.App.-Dallas, 2007, no pet. h.). The Court refuses to address or discuss the merits of the issue in this appeal.

appeal may affect the ultimate outcome, I must now leave that to the advocates for the parties and to the higher courts.

All I ask is that on these tough, complex cases, that I receive what I give to the other justices on this Court on every case—the time needed to conduct the review, analysis, and research of the proposed opinion of the Court as necessary in the exercise of my discretion, and not have my vote deemed in support of a draft based only on the passage of time. I know of no rule, internal procedure, or statute that deems an appellate judge's vote on the judgment of the court on the merits of an appeal, as distinguished from procedural matters or motions to reconsider the original vote—other than the purported internal operating procedures of this Court.

### COMMENT ABOUT THE ISSUES

In this appeal, the Court has entirely glossed over the appellees' arguments. The appellees are faced with an almost impossible task—having a jury determine the extent of damages proximately caused by their negligence, if any, without the ability in this or a subsequent proceeding to determine the extent of the negligence of all the persons who may have contributed to a single catastrophic event. In this regard, the appellees, at least the Zachry defendants, are not seeking any dollars from Texas A & M University or their officials or employees.[2]

By various arguments, the appellees are arguing that the fact finder should and can determine fault for the event, not only so that the public will know and understand where the fault for the event is properly placed so that corrective action can be implemented, but so that the fact finder is not asked to do the impossible by determining the extent of damages and then backing off the total damages to only those damages proximately caused by the defendants not protected by sovereign immunity. Clearly the easiest way to do this is to allow the fact finder to be presented with all the evidence regarding fault for the event and let the fact finder determine that responsibility. Once total damages are also determined by the fact finder, the legal issue of who pays how much can be determined.

The appellees' basic assertion is that the purposes of sovereign immunity, the most notable of which is protecting the treasury of the sovereign, are not violated if the party is not seeking a monetary recovery or contribution from the sovereign, but rather is seeking only a determination or declaration of the extent to which "the sovereign" and its officials and employees may have caused the catastrophic injury causing event.

The appellees have laid out a number of complex arguments that are not addressed by the simple mantra that the appellees cannot point to a waiver of sovereign immunity. Under the appellees' arguments, that mantra only addresses the first step in a long journey to fairly determining who caused what damages and then who must pay for those injuries.

Initially, I thought I had identified a shortcut to the resolution of this appeal related to the notice of the claim, but as I began analyzing another opinion authored by Justice Vance, *Texas Dept. of Transp. v. York*, 234 S.W.3d 212 (Tex.App.-Waco 2007, pet. filed), I began to more fully comprehend and appreciate not only the appellees' arguments, but also the arguments being made by the State, in both cases.

---

**2.** In a separate appeal the officials of TAMU are asserting sovereign immunity to the claims against them by the plaintiffs in the underlying action.

But ultimately my analysis was truncated by the arbitrary application of an arbitrary deadline. *See Texas Dept. of Transp. v. York,* 234 S.W.3d 212, 220–223 (Tex.App.-Waco 2007, pet. filed) (Special Note by Chief Justice Gray). The majority had all the time they needed or wanted to work up their proposed opinions in this appeal and *York.* I, however, am compelled to do all I must do by their arbitrary deadline, notwithstanding other judicial and administrative demands upon my time, or they will tell you that I voted for their result, even when they have been explicitly told otherwise.