IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00046-CV

 

Bobbie and Michael Lyon,

                                                                                    Appellants

 v.

 

Atico International USA, Inc.,

                                                                                    Appellee

 

 

 



From the 170th District
Court

McLennan County, Texas

Trial Court No. 2006-1859-4

 



MEMORANDUM  Opinion



 








            Bobbie and Michael Lyon sued
Atico International, USA, Inc. for products liability based on a fall Bobbie
sustained when sitting on a portable picnic table manufactured by Atico.  The
trial court granted Atico’s no-evidence motion for summary judgment.  On appeal,
the Lyons argue that the trial court erred by: (1) granting Atico’s motion; and
(2) sustaining Atico’s objections to their summary judgment evidence and
excluding the evidence.  We affirm.

 

ANALYSIS

In issue one, the Lyons challenge the
granting of Atico’s no-evidence motion for summary judgment.  In issues two,
three, and four, they challenge the exclusion of three paragraphs of Michael’s
affidavit.  In issue five, they challenge the exclusion of excerpts from Bobbie’s
deposition testimony.

Evidentiary Issues

We consider the Lyons’s evidentiary
issues first to determine which evidence we may consider when addressing the
merits.  See Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist., 127
S.W.3d 235, 240 (Tex. App.—Waco 2003, no pet.).  In doing so, we apply an abuse-of-discretion standard.  See Rosas v. Hatz, 147 S.W.3d 560, 563 (Tex. App.—Waco
2004, no pet.).

            The trial court excluded three
paragraphs of Michael’s affidavit:  

It was obvious that the structure of the
corner of the picnic table that collapsed was not sufficiently strong to
support my wife when she sat on it.  I am aware of no other explanation that
would explain the collapse.  I had observed the picnic table earlier that day
and it did not appear damaged or modified in any way.

 

My weight in May, 2004 was probably in
the neighborhood of 240 pounds.  I believe a significant percentage of the
adults, particularly males, that live in McLennan County, Texas exceed 160
pounds.  While the percentage is probably lower, I believe a significant number
of adult women in this area also exceed 160 pounds.  In my opinion, in May,
2004 Bobbie Lyon probably weighed 160 pounds and maybe a little more.

 

It is my observation and common
knowledge that all other seats in this area, including those made of plastic and
aluminum are designed and manufactured to support people whose weight exceeds
160 pounds.  Prior to May, 2004 it would never have occurred to me that a seat
designed and manufactured for adult use would have a maximum chair weight load
of only 160 pounds.

 

The trial court excluded Bobbie’s
deposition testimony as to “what caused the alleged accident or how the alleged
accident could have been avoided.”

We first note that Bobbie merely
testified to the purchase of the table, the facts surrounding the accident, and
her alleged injuries.  Her testimony does not address the cause of the accident
or how it could have been avoided.  Thus, we overrule issue five.  

As for Michael, his testimony regarding
the table’s structural integrity at the time of the accident was properly
excluded because he did not observe the accident.  See Tex. R. Evid. 701 (Lay witness testimony must be rationally based on the perception
of the witness); see also Bd. of Trs. of the Fire & Police
Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc., 191 S.W.3d 185, 193 (Tex.
App.—San Antonio 2005, pet. denied)  (“The perception underlying the lay witness’s testimony may be what
was seen,
heard, smelled, tasted, touched or felt;” Rule 701 “presumes the
witness observed or experienced the underlying facts”).  His testimony
regarding the weight of
other men and women in the county and the structural stability of other seats
in the county is also incompetent summary judgment evidence.  See Towers, 191 S.W.3d at 193; see also
 Texas Division-Tranter v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994) (“[S]ubjective beliefs are
no more than conclusions and are not competent summary judgment evidence.”); Residential Dynamics, LLC v. Loveless, 186 S.W.3d 192, 198 (Tex. App.—Fort
Worth 2006, no pet.) (“A
conclusory statement is one that does not provide the underlying facts to
support the conclusion.”).

The remainder of the excluded portions
of Michael’s affidavit is rationally based on Michael’s observations and
experiences.  See Towers,
191 S.W.3d at 193; see also Montez v. Bailey County Elec. Coop., 397 S.W.2d 108, 111 (Tex. Civ. App.—Amarillo 1965, writ ref’d n.r.e.) (“Estimates of age, size, weight,
distance, etc. made by qualified witnesses are generally held to be
admissible”).  Because these
portions were improperly
struck, we sustain issues two, three, and four in part.

No-Evidence Motion

            We review a no-evidence
summary judgment under the same standard of review as a directed verdict.  See
Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex. 2006).  “We review
the evidence presented by the motion and response in the light most favorable
to the party against whom the summary judgment was rendered, crediting evidence
favorable to that party if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not.”  Id. at 582.  A no-evidence summary
judgment will be defeated if the non-movant produces some evidence “raising an
issue of material fact” on the elements challenged by the movant.  Id.

            A manufacturing defect
exists when a product deviates, in its construction or quality, from the
specifications or planned output in a manner that renders it unreasonably
dangerous.  Ford Motor
Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004).  In addition to showing a “deviation from specifications or
planned output,” the plaintiff must show that the product was defective when it
left the manufacturer and that the defect was a producing cause of the
plaintiff’s injuries.  Ford
Motor Co. v. Ledesma,
242 S.W.3d 32, 41-42 (Tex. 2007).
 Producing cause must be (1) a substantial cause of the event in issue and (2)
a but-for cause, namely one without which the event would not have occurred.  Id. at 46.

The Lyons argue that they have raised
fact issues as to causation.  We disagree.  “Requiring proof of a deviation
from manufacturer specifications or planned output [] comports with our
recognition that expert testimony is generally encouraged if not required
to establish a products liability claim.”  Ledesma,
242 S.W.3d at 42 (emphasis added).  Expert testimony is required unless “general
experience and common understanding would enable the layperson to determine from
the evidence, with reasonable probability, the causal relationship between the
event and the condition.”
 Tamez, 206 S.W.3d at 583; Driskill v. Ford Motor Co., 269
S.W.3d 199, 204 (Tex. App.—Texarkana 2008, no pet.).  Whether expert testimony is required is
a question of law.  Tamez, 206 S.W.3d at 583.

The
 Lyons have neither shown a “deviation
from specifications or planned output” nor
ruled out other possible causes, such as a design defect.[1] 
See Ledesma, 242 S.W.3d at 41-42; see also Cooper Tire & Rubber
Co. v. Mendez, 204 S.W.3d 797, 807 (Tex. 2006) (Fact that tire failed was insufficient to
establish a manufacturing defect, as such a failure could have been caused by a
design defect).  Moreover, Bobbie’s testimony that she has suffered injuries as
a result of the accident is merely her subjective belief, especially in light
of her testimony suggesting that her pain could be affected by the natural
aging process and arthritis.  See Carrozza,
876 S.W.2d at 314; see also
Praytor v. Ford
Motor Co., 97 S.W.3d
237, 241 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (Expert testimony was warranted
where record showed that injuries could have resulted from more than one
cause).  The evidence merely creates a suspicion that a manufacturing defect
caused the table to collapse, thereby causing Bobbie’s alleged injuries.  See
Driskill, 269 S.W.3d at 205.  Under these facts, causation is not
within a layperson’s general
experience and common understanding; thus, expert testimony was required to establish a manufacturing
defect.  The Lyons offered no expert testimony.    

Accordingly, we cannot say that the Lyons have raised a fact issue as to whether the table was defective or any defect was a
producing cause of the alleged injury.  See Ridgway, 135 S.W.3d at 600; see also Ledesma,
242 S.W.3d at 41-42.  Issue one is overruled.  

The trial court’s judgment is affirmed.

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed 

Opinion
delivered and filed June 24, 2009

[CV06]

 

 









[1]               The Lyons alleged a
design defect, but Atico’s no-evidence motion also challenged this claim.  The
Lyons do not appeal on this basis.








.

 

You are further instructed that when the athlete
is not eligible for lifetime income benefits, weekly benefits available to a
professional athlete subject to the act are equal to or greater than the income
benefits provided under the act if the total amount of the payments provided
for in the contract or collective bargaining agreement is equal to or greater
than the maximum weekly benefit available under the act multiplied by 104.[5]

 

            Answer yes or no. 
_____________________

 

The jury answered “No”; that is, the benefits
under Hennings’s employment contract were not equal to or greater than the
benefits available to him under the Act.

            Gulf filed a motion for new trial
that:

·       
challenged the legal and
factual sufficiency of the evidence to support the jury’s answer to Question 1
and asserted that the jury’s answer was “against the overwhelming weight of
evidence”;

 

·       
argued that under section
406.095, Hennings had made a de facto election of his contract and CBA
benefits;

 

·       
argued that the income and
medical benefits that Hennings received under his contract and the CBA greatly
exceeded what he could have received under the Act (104 weeks of income
benefits at $533 per week); and

 

·       
argued that section 406.095
prohibits professional athletes from receiving both contract and CBA benefits
and workers’ compensation benefits.

 

            B.  Issue on Appeal

Gulf’s first issue states: “Whether the Texas
Workers’ Compensation Appeals Panel and the Trial Court committed reversible
error in determining the “highest benefits” available to Hennings were those
provided by the Texas Labor Code and not the benefits provided by Hennings’
Contract and Collective Bargaining Agreement, and in denying Appellant’s Motion
for New Trial.  Additionally, that the great weight and preponderance of the
evidence is against the finding of the jury as to Special Issue No. 1.”  We view
this issue as two separate complaints: (1) as a matter of law, benefits under
the employment contract exceeded those available under the Act; and (2) the
evidence was factually insufficient to support the jury’s finding.

            C.  Preservation

Hennings argues that because Gulf did not object
to Question 1 and did not move for a directed verdict, for JNOV, or to
disregard the jury’s answer to Question 1, it has not preserved its first
issue.  Hennings is partially correct in that, by Gulf’s failure to object to
Question 1, appellate review is limited to the law as stated in Question 1.  See
Minnesota Life Ins. Co. v. Vasquez, 192 S.W.3d 774, 778 (Tex. 2006); see
also Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 618-19 (Tex. 2004) (“In assessing the evidence, we assume that the portions of the charge just
quoted, because they were given without objection, correctly state the law.”); Edward
D. Jones & Co. v. Fletcher, 975 S.W.2d 539, 543 (Tex. 1998) (holding that
legal insufficiency no-duty complaint preserved without objection to charge).

While the technically preferable motion to attack
the verdict on the ground that the employment contract provided the highest
benefits available to Hennings as a matter of law would have been either a
motion for JNOV or a motion to disregard the answer to Question 1, we find that
Gulf’s motion for new trial preserved the first contention in this issue (which
we construe as a reassertion of the third point in its motion for new trial)
for appellate review.[6]  See
Doctor v. Pardue, 186 S.W.3d 4, 15-16 (Tex. App.—Houston [1st Dist.]
2005, pet. denied) (substance of motion is not determined solely from its
caption or introduction, but instead is gleaned from body of motion and prayer
for relief); Tex. R. Civ. P.
324(b).

            D.  Factual Sufficiency Issue 

We first address the second contention of issue
one, basing our review on the law set forth in the unobjected-to charge.  

Question 1 presented the controlling issue—which
option provided Hennings the highest benefits:  (1) his employment contract
with the Cowboys and the NFL’s CBA, or (2) the Workers’ Compensation Act.

Question 1 did not instruct the jury to lump
together both sets of benefits to determine if Hennings’s employment benefits
were equal to or greater than benefits under the Act.  Rather, it gave separate
instructions about when medical benefits from the athlete’s employment are
equal to or greater than medical benefits under the Act and about when income
benefits from the athlete’s employment are equal to or greater than income
benefits under the Act.  Therefore, and absent a contrary instruction, the jury
was authorized to find that, if Hennings’s employment medical benefits alone
were not equal to or greater than medical benefits under the Act, his
employment benefits were not equal to or greater than benefits under the Act.

Gulf had the burden of proof on this question by a
preponderance of the evidence.  See Tex.
Lab. Code Ann. § 410.303 (Vernon 2006).  Thus, as the party complaining on
appeal of the factual insufficiency of the evidence, it must demonstrate that
the adverse finding is contrary to the great weight and preponderance of the
evidence.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001).  We weigh all the evidence, and we
can set aside the adverse finding only if it is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Id.

Some facts are undisputed:  Hennings suffered an
on-the-job injury and the Cowboys had workers’ compensation insurance coverage;
his post-injury income from his employment greatly exceeded the income benefits
available under the Act; and his medical benefits from his employment contract expired
when the Cowboys terminated his contract.

Hennings said that his neck injury was related to chronic
arthritic bone spurs and that there also was bulging of the disc in the segment
above the fusion and in the two segments below it.  Although there was no
evidence quantifying the value of lifetime medical benefits available under the
Act, the jury could reasonably infer that having such benefits available under
the Act was greater than the medical benefits he had received from his
employment, while considering that he had no future medical benefits as a
result of the Cowboys’ termination of the employment contract.  Thus, the
jury’s answer to Question 1 of the charge as given was not contrary to the
great weight and preponderance of the evidence.

            E.  Statutory Construction

We now turn to the first contention of Gulf’s
first issue, i.e., that Hennings cannot recover as a matter of law.[7] 
To make this determination, we must construe the statute and rules in question.

We construe a statute “first, by looking to the
plain and common meaning of the statute.”  Fitzgerald v. Advanced Spine
Fixation Systems, 996 S.W.2d 864, 865 (Tex. 1999).  If the statutory
language is unambiguous, we adopt the plain meaning of the provision’s words
and terms.  Id.  We also are to liberally construe workers’ compensation
law to provide benefits to injured workers.  Albertson’s, Inc. v. Sinclair,
984 S.W.2d 958, 961 (Tex. 1999).

Hennings asserts that section 406.095 requires an
election only when the professional athlete’s income and medical
benefits under his employment contract are equal to or greater than the corresponding
benefits under the Act.

The unambiguous language in section 406.095 and
Rule 112.401(a) supports Hennings’s construction.[8] 
The first sentence of section 406.095(a) defines which professional athletes
may not receive benefits from their employment contracts and benefits
under the Act:  those professional athletes whose employment contract benefits
are equal to or greater than benefits under the Act are precluded from
receiving both sets of benefits.  See Tex.
Lab. Code Ann. § 406.095(a).  The second sentence confirms this
construction because only an athlete “covered by such a contract
or agreement who sustains an injury in the course and scope of the athlete’s
employment” is required to “elect to receive either the benefits available
under this subtitle or the benefits under the contract or agreement.”  Id. (emphasis added).

We next address Gulf’s “piecemeal” issue:  what is
the result if a professional athlete’s income benefits from his employment are
equal to or greater than the income benefits under the Act, but his medical
benefits from his employment are not equal to or greater than the medical
benefits under the Act?

We believe that the Act requires that the income and
the medical benefits from employment must each be equal to or greater than the corresponding
income benefits and medical benefits available under the Act.  We base this
determination on three factors.

First, section 406.095(a) says as much.  It precludes
only a professional athlete “entitled to benefits for medical care and
weekly benefits” from his employment that are equal to or greater than
benefits under the Act from also receiving equivalent income and medical
benefits under the Act.  See Tex.
Lab. Code Ann. § 406.095(a) (emphasis added).  The statute does not
mandate lumping together the two types of benefits to determine whether the
employment set of benefits is equal to or greater than benefits under the Act.

            Second, we construe the Act liberally
in favor of providing benefits to an injured worker.

            Third, when the Texas Workers’ Compensation
Commission (TWCC) adopted its rules for professional athletes as required by
section 406.095(b) in 1992, it responded to public comments on proposed Rules
112.401 and 112.402.[9]  One
comment opined that the athlete should be allowed a choice for each of the
benefits provided under the Act.  The TWCC disagreed, stating:

Article
8308-3.075 [now section 406.095] does not require that athletes be given a
choice for each benefit.  It requires that, under specific conditions,[10] an athlete
choose between workers’ compensation benefits and contract or collective
bargaining benefits.  Based on the statute and § [Rule] 112.402, if any
of the benefits fails to be equal to or greater than workers’ compensation benefits, the athlete is not allowed to make an election.

 

17 Tex. Reg. 6362, 6363 (1992), 1992 WL 226112 (emphases added) (to
be codified at 28 Tex. Admin. Code §§ 112.401-.402)
(proposed June 19, 1992) (Tex. Workers’ Comp. Comm’n)).  We agree with Hennings
that this statement evinces an intent that both the income benefits and the
medical benefits under the athlete’s employment contract, considered
separately, must be equal to or greater than the corresponding income and
medical benefits available under the Act.

We reject Gulf’s construction of the statute and
rules.  We therefore hold that Hennings was not precluded from workers’
compensation benefits in addition to his employment benefits.  We overrule
Gulf’s first issue.

IV.  Offset or Credit

Gulf also filed a post-verdict motion titled
“motion for offset/credit,” which asked the trial court to allow an equitable
offset or credit for the contractual and CBA medical and income benefits that
Hennings had received.  The trial court denied that motion, and in its second
issue, Gulf asserts that the trial court abused its discretion in doing so.

A trial court abuses its discretion when it acts
arbitrarily and unreasonably, without reference to guiding rules or principles,
or when it misapplies the law to the established facts of the case.  Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).

Gulf cites no authority in workers’ compensation
law—statute, rule, or case law—that would allow a trial court to grant such an
equitable offset or credit.[11] 
Without any authority, we cannot say that the trial court abused its discretion. 
Furthermore, the judgment in this case entitles Hennings to future
medical benefits, and Gulf has paid only past medical benefits.  We
overrule Gulf’s second issue.




V.  Disability Period

Question 2 of the charge asked whether Hennings
had a period of disability after March 7, 2001, and if so, what were the
beginning and ending dates.  The jury found a disability from March 8, 2001,
until June 21, 2001, or fifteen weeks.

In two cross-issues, Hennings complains that the
jury’s finding of fifteen weeks should be set aside because he conclusively
proved, i.e., as a matter of law, that he was disabled for at least 104
weeks, the maximum disability period for income benefits under the Act.  See Tex. Lab. Code Ann. § 401.011(30) (Vernon Supp. 2007).  He says that the trial court erred in not granting his motion to
disregard the jury’s finding and not entering judgment for temporary income
benefits for 104 weeks.

Hennings had the burden of proof on the disability
question.  See id. § 410.303.  When the party that had the burden of proof at trial complains of
legal insufficiency of an adverse finding, that party must demonstrate that the
evidence establishes conclusively, i.e., as a matter of law, all vital
facts in support of the finding sought.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  We first examine the record for evidence
supporting the adverse finding, ignoring all evidence to the contrary.  Id.  If more than a scintilla of evidence supports the adverse finding, our inquiry
ends.  Id.  “More than a scintilla of evidence exists where the evidence
supporting the finding, as a whole, rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.”  Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (citations omitted). 
In reviewing the legal sufficiency of
the evidence, we view the evidence in the light favorable to the finding,
crediting favorable evidence if a reasonable factfinder could, and disregarding
contrary evidence unless a reasonable factfinder could not.  City of Keller v. Wilson, 168 S.W.3d
802, 807, 822 (Tex. 2005).

Disability is “the inability because of a
compensable injury to obtain and retain employment at wages equivalent to the
preinjury wage.”  Tex. Lab. Code Ann.
§ 401.011(16).

Hennings argues that he suffered a career-ending
injury, was terminated by the Cowboys, and was not able to return to any job or
profession earning his preinjury wage.  Hennings testified that his surgeon
indicated that he had received an excellent result from his surgery, that his
prognosis was excellent, and that he was released from his surgeon’s care. 
Hennings also said that while his surgeon advised against his continuing to
play football, no physician prohibited him from playing.  As of the time of
trial, Hennings had not seen a physician for his neck injury in over two
years.  Hennings admitted that he could have played football for either the
Cowboys or another team after June 21, 2001, at his own option, but he chose to
retire to avoid the substantial risk of further injury to his cervical spine.

Hennings’s admission that he could have continued
playing football but chose not to is more than a scintilla of evidence that
supports the jury’s fifteen-week disability period finding.  Accordingly, we
overrule Hennings’s two issues.

VI.  Conclusion

            For the reasons stated, we affirm the
trial court’s judgment.

 

                                                                                    BILL VANCE

Justice

 

Before Justice Vance and

Justice
Reyna[12]

Affirmed

Opinion delivered and
filed January 30, 2008

[CV06]            

 









[1]  The Labor Code’s provisions governing workers’ compensation
is commonly called the Workers’ Compensation Act and will be referred to in
this opinion as “the Act.”





[2]  We will hereafter refer to the contract of
employment and the CBA collectively as his “employment contract.”





[3]  The judge also found that Hennings’s income
under his employment was higher than income benefits available under the Act.





[4] See Tex. Lab. Code Ann. § 406.095(c) (Vernon 2006) (defining professional
athlete as a person employed as a professional athlete by a franchise of the
National Football League; the National Basketball Association; the American
League of Professional Baseball Clubs; the National League of Professional
Baseball Clubs; the International Hockey League; the National Hockey League; or
the Central Hockey League).

 





[5]  These instructions essentially track Rule
112.402(a-b).

 







[6]  The remedy is, however, limited
to a remand for a new trial.  See Horrocks v. Texas Dep’t Transp., 852 S.W.2d 498, 499 (Tex. 1993).



 





[7]  Ordinarily we would address this contention
first because it could result in a rendition of judgment.  Here, only a remand
is possible.  See footnote 6.

 





[8]  Under this construction,
Hennings essentially asserts that there are professional athletes who may
recover both employment benefits and workers’ compensation benefits.





[9]  The TWCC’s interpretation of its own rules is
entitled to deference by the courts.  See Public Util. Comm’ v. Gulf States Util., 809 S.W.2d 201, 207 (Tex. 1991).  An administrative agency has the
power to interpret its own rules, and its interpretation is entitled to great
weight and deference and is controlling unless it is plainly erroneous or
inconsistent.  Continental Cas. Co. v. Rivera, 124 S.W.3d 705, 710 (Tex.
App.—Austin 2003, pet. denied); accord State v. New, 159 S.W.3d 232, 234
(Tex. App.—Fort Worth 2005, no pet.).

 





[10]  We assume without deciding that these “specific
conditions” are what we address in this opinion:  only an athlete whose
employer has workers’ compensation insurance coverage and whose employment
benefits are equal to or greater than workers’ compensation benefits is
required to elect which set of benefits he will receive and may not receive
both sets of benefits.





[11]  Moreover, we determined above that professional
athletes who are not required to elect by section 406.095 may recover both
employment benefits and workers’ compensation benefits.  Thus, an offset or
credit as claimed by Gulf would contravene section 406.095.





[12]
            We issue this opinion with only
two justices participating because of Chief Justice Gray’s recusal.  An
explanation is in order.

This appeal was submitted without argument on
March 7, 2007.  We issued an opinion (now withdrawn) on July 11, 2007. 
Hennings filed a motion for rehearing, and we requested a response, which Gulf
filed.

This Court’s “Procedures for Internal Deadlines
for Approval of Opinions and Orders,” which sets deadlines for the approval or
non-approval of the opinions and orders that the Court issues, specifies that
an opinion issued after a motion for rehearing is filed will be issued on the
first Wednesday after 30 days after the date it is distributed by the author to
the remaining justices.  If a reviewing justice does not indicate an intent to
concur or dissent by two weeks prior to the issue date or having so indicated
does not distribute a proposed concurring or dissenting opinion by one week
prior to the issue date, then that justice is deemed to have approved the draft
opinion.  See Tex. A&M Univ. v. Bading, 236 S.W.3d 801, 809 (Tex.
App.—Waco 2007, pet. filed) (op. on reh’g); see also Tesmec USA, Inc. v.
Whittington, 192 S.W.3d 178, 183-88 (Tex. App.—Waco 2006, pet. denied) (per
curiam) (op. on reh’g).  This Court’s internal deadline procedures were
designed in part to implement that portion of the Texas Standards for Appellate
Conduct which provides, “The court will endeavor to avoid the injustice that
can result from delay after submission of a case.”  Tex. Standards of App. Conduct, The Court’s Relationship with
Counsel No. 5, reprinted with Tex.
R. App. P. (Vernon Supp. 2007).

The pertinent draft of the proposed opinion in
this cause was furnished to Chief Justice Gray on December 11, 2007.  He noted
“intend to concur or dissent” on December 27, 2007; however, no proposed
concurring or dissenting opinion was distributed by the specified date, January
9, 2008.

Sometime between December 27, 2007 and January 9,
2008, Chief Justice Gray requested that he be shown as “not participating” in
this decision.  This was an unexplained reversal of his prior stance on the
issue of whether all three justices must participate in a decision.  See
Tesmec USA, 192 S.W.3d at 181 (Gray, C.J., dissenting on reh’g) (“I do not
believe I have the option to ‘not participate’ in casting a vote on a judgment
disposing of an appeal.  I believe it is my ethical duty to participate.”) (citation
omitted).  Consistent with this Court’s internal deadline procedures, Chief
Justice Gray was deemed to have approved the Court’s opinion on January 9.  See
Bading, 236 S.W.3d at 811.  Thus, we respectfully declined his request to
be shown “not participating.”  Thereafter, Chief Justice Gray recused himself.

Therefore, in order “to expedite a decision,” we
invoke Rule of Appellate Procedure 2, to the extent necessary, to suspend Rule
41.1(a)’s possible application and to issue this opinion with two justices
participating.  Tex. R. App. P.
2.